Good morning and may it please the court, my name is Bruno Terabici and I represent Plainness Appellant Russell Road Food and Beverage LLC. With the court's permission I'd like to reserve two minutes of time. Please watch the clock. Your honors, this case involves a group of defendants who appropriated the long abandoned Crazy Horse 2 trademark which had not been used in five years and nine years to avoid infringement by relying on the original trademark owner, the power company's first use of the mark in 1984 even though defendants cannot show a clear chain of title for the trademark back to that original trademark owner and even though defendants do not have evidence to rebut the presumption of abandonment that has been triggered by the three years of the more than three years of non-use. Now in the district court below, Russell Road originally obtained a preliminary injunction against the defendants and in that original order granting the injunction the district court specifically held that the defendants did not acquire the Crazy Horse 2 trademark at that July 1st 2011 foreclosure sale that they only acquired the real land or the real documents that were submitted after the first injunctive ruling that caused the district court to change its mind. I mean isn't that sort of how this came about and really the critical issue is whether or not there's anything in those changed documents that should have persuaded the district court to vacate its original injunction file. Isn't that sort of what we need to look at more than what That's exactly right. So initially I will say that the guarantee documents were always in the possession of defendants and had to exercise due diligence they could have submitted it. So initially I would say that defendants renewed motion to vacate was an improper and an untimely motion for reconsideration under 59E. The district court accepted I guess Mr. Altman's declaration that they didn't have the documents and that it took them a week to find them. So the district court apparently thought it was sufficiently new evidence to justify its ruling. Your Honor, that is not clear to me. There was no hearing on the renewed motion to vacate and if you look in the district court's order granting the passing statement referencing the 54B standard which implies perhaps what you're saying but there was no concrete 52A finding that the guarantees were new evidence and there we have lots of evidence in the record that the documents were in the defendant's possession and that they just didn't submit them previously. With that being said we think that even with the transfer to defendants. Can you address that? Sure. That the district court was looking at the guarantee the corporate resolution it looked like for the guarantee. Right and we don't take any issue we do not dispute that the power company validly or had authorized the guarantees. What we take issue with is that the guarantee was never enforced never transferred the trademark. There's really only one event that occurred here and that was the July 1st 2011 foreclosure sale and at that foreclosure sale there was no property under the guarantee of the power company that was sold at the July 1st 2011 foreclosure sale. So one distinction to keep in mind that's really important here is there are two entities. There's Rick Riz LLC that's the company that owned the real estate and the buildings. It was the landlord for the power company. The power company was the entity that owned the business and the trademark and if you look at the authority where does the authority come to foreclose to conduct that foreclosure sale it comes from the deed of trust and only Rick Riz was the trustor under that deed of trust. It comes from section 5.5 of the deed of trust. It's defined on the first page as the real property that land in the buildings. It is not defined as any intangibles. It's certainly not defined as any property of the guarantor of the power company and if you contrast that with the guarantee there is no foreclosure provision in the guarantee. There's no power of sale provision in the guarantee. You can't foreclose on the property in the guarantee like you can in the deed of trust and so the guarantee is really more of a red herring because nothing under the guarantee was sold at that July 1st 2011 foreclosure sale. If you look at all the documents in the case that talk about that foreclosure sale all of them talk about the deed of trust and they talk about the land being sold. None of them talk about the guarantee. None of them talk about the power company or the Crazy Horse II trademark. So opposing counsel suggests that at the foreclosure sale in the language of the the trustee's deed of sale and whatever it says you know the real property but that the government relinquished all of the personality that went with the building voluntarily relinquished and so it could be inferred they also relinquished the trademarks and other intangibles. How do you address that? That seems to be mere speculation. I don't see any documents that state that the government actually transferred anything to defendants and I will note that wasn't the basis for the court's order vacating the preliminary injunction. That order was there to begin with the first time around when we briefed the injunction and the district court found that the mortgage prose February 28, 2011 order did not transfer any property of the power company to defendants. Can you walk me through this foreclosure? It's a little bit confusing to me. So the district court originally authorized the government to have a public sale of both the real property and the intangibles and and says that lender will have like a fourth priority claim on the proceeds and that lender can't foreclose because you can't foreclose against the government. And then after some further events the district court says okay rather than have a public sale we'll lift the stay and allow you to foreclose now on the real property I guess for all purposes which the opposing counsel makes a makes a lot of puts a lot of weight on. So what happened in between these two rulings? What was the, if you can take me through the sequence of events and how we got there? That's an accurate summary of what happened and what happened was Security Pacific came in and said we're a secured creditor. We had filed a UCC statement on the deed of trust, the lien on the property and therefore we're third or fourth in the order of distribution. Canico ended up buying the rights to the loan, they came in, they spin the place of Security Pacific. What happened was the government was unable to sell the property and therefore the government agreed to allow the stay on the foreclosure sale to be lifted and so the government decided that was no longer going to proceed with the forfeiture sale and then Canico could go ahead and proceed with their foreclosure sale. A right that stems from contract from the deed of trust itself and again that those orders were all there already the first time around and in the briefing on the injunction and it's really only the existence or submission of the guarantee that changed the district court's mind. So Powerco owned the personalty I guess, the business as a going concern, the trademark. What happened to those? Those are still in the, are owned by the government now. They were forfeited to the government and so if we were looking at the I made the point that there's no foreclosure provision in there like there is for the deed of trust. There's also specific provisions in the guarantee that talk about how you go about enforcing the guarantee. So you go and you look at paragraph 19 of the guarantee. The lender needs to tell the guarantor of the power company that Rick Riz has defaulted under the promissory note and there's a certain amount due deficiency and indebtedness and now the must pay that money pursuant to paragraphs 19 and paragraphs 1 of the guarantee. That never happened. There's no evidence in the record it ever happened. We pursued it through discovery. We have discovery responses saying they never enforced the guarantee and then it's only once the power company fails to pay that deficiency, that indebtedness, that the lender can go ahead and try to enforce its security interest that's provided by the guarantee and there's a two which is in paragraph 15 of the guarantee and it basically involves initiating legal action to do so. I'll also say that with... Let me ask you a question. What are you asking us to do here? Are you asking us to make a declarative finding that these legal documents don't mean what you're arguing or urging? Are you asking us to remand this back to the district court to make a better record to justify what it did or didn't do and why? Ideally Russell Road would like this court to look at the evidentiary record to find that it's clear and undisputed because the parties don't dispute what the documents are just the import of the documents and what happened and we would like the court to say that based on the evidentiary record it's clear that defendants did not acquire the trademark at the July 1st 2011 foreclosure sale and therefore they do not have priority as the district court ruled. Alternatively at a minimum we would like the case remanded so the court can make specific 52a findings on the issues of the non-acquisition of the trademark and on the abandonment because all the court did in terms of abandonment was make a passing conclusory statement that it found that it was likely the trademarks were not abandoned but we can't tell from the district court's order whether it ever applied that presumption of abandonment which was required to do because the trademark had not been used for more than three consecutive... You want more factual findings on what the government's intent was I mean there's a lot of different factual issues for abandonment is that what you're asking us for on that on that point? That would only be if the court is not willing to find that on the acquisition issue the record is clear that defendants did not acquire the trademark at the foreclosure sale and the reason I say that is because you know this is all under the first prong of trademark infringement priority you know who has priority in the trademark rights and if defendants never acquired the Crazy Horse 2 trademark at that July 1st 2011 foreclosure sale then they can't claim priority back to 1984 when the power company used the trademark and that element's done but if but otherwise we reach abandonment because if the mark was abandoned at the time then that can't be acquired. So one question about the guarantee document itself so the guarantee purports to give a security interest to Powerco's trademark or to its intangibles to the extent they're in the possession of the lender so what do we do with that language? That's correct so California's UCC provision 9201 requires that security interest be construed strictly narrowly according to the language in the security document here there's evidence in the record we there's no evidence that there was any property of the power company especially the trademark on deposit or in the physical possession of the lender and so you know our initial position was we don't think it even provides a security interest in the Crazy Horse 2 trademark unfortunately the district court never tackled that issue in its order either so I would say that you know there was nothing requiring the lender to put that limiting language in the guarantee the lender certainly could have just had it drafted to say we get a security interest in all the property of the power company they chose to have that limiting language in there and therefore we think there's no security interest in the trademark anyway in that guarantee. Good morning may it please the court my name is Brian Altman I'm here on behalf of the appellees your honor this court properly remanded this case to the district court for its rule on the appellees motion vacate and this court has stated previously that rule 54B states that the district court can modify an interlocutory order at any time before the entry of a final judgment there's actually no timeline on this and quoting again from this court from Credit Suisse which is in 2005 again going back to the Tanner motor livery case we have long recognized the well-established rule that a district judge always has power to modify or overturn an interlocutory order or decision. What about the new evidence issue I mean I guess a different attorney Mr. Mushkin I think his name was that oh district court you're not thinking about our guarantee and I just didn't happen to bring those those documents today and then there's a declaration from Mr. Altman saying oh we never had the documents and we had it I guess that's you right we have a declaration from you saying oh you know we search for the documents and whatever so does that make the documents new evidence the district court didn't make any specific finding about that. I'm not sure if it's new evidence but it certainly doesn't disturb the fact the court has inherent authority at any time to alter or modify or overturn an interlocutory order. So you're saying that no new evidence is required though I mean are the the two rules do require both of the rules I think require that that there be some basis with new evidence. Well there also is the basis where the court can correct clear error and here and I disagree with my appellate counsel there and we filed a request for judicial notice at the same time as our motion and I would point out that there are a number there's ample factual evidence and legal authority for the district court to have found that there was a transfer of the crazy horse to trademark to appellees. For example the guarantees which the court is asked about by the power company and Mr. Rizzolo were in favor of the bank. The guarantee by the power company specifically referenced the intangible property. So it says the intangibles that are in the possession of the lender and so there was no evidence I take it that the trademark was in possession of the lender I'm not sure what that would mean but there wasn't any transfer of it. So why is it that the lender even took a security interest in Power Co.'s trademark? Well because the trademark is very valuable obviously and it took a security interest. Right but the language doesn't say that in the guarantee itself correct? Well no if you look at the guarantee and I have this as the excerpt of record 932 to 934 in 1468 it does reference the intellectual property but I would also point out. So we're in the guarantee I know that the the corporate resolutions have has that language but the guarantee itself does not as I understand it the guarantee just gives a security interest in property that's in possession of the lender which the trademark was not. Well it actually gives a actually I'm not sure because I believe the guarantee gives. What page are you looking at? You know I don't have it before me. You don't have the guarantee? I don't have it in front of me. I apologize. Okay well as I read the guarantee language it only gives a security interest in property that's in the the possession of the the lender and so the language of the guarantee does not give a security interest in the trademark. That the guarantee talks about it specifically references the intangible property. It does. All property of hereafter in the physical possession of or on deposit with the lender and so it's a the plain language it doesn't cover trademark or intangible properties that's not in possession of or on deposit with the lender. Well I would note that the Security Pacific Bank filed a UCC 1 and which the appellants have not mentioned to this court in paragraph 4 of exhibit 8 of that So I have a I have a copy of a UCC but it said personal property of the debtor which was Rick Riz and Rick Riz didn't own the trademark. Right but if you but first of all the power company authorized Rick Riz to actually sign a security interest in the intangible property or any of the property both the real and intellectual property of the power company and if you look at this. So where is that because I certainly didn't see that in the in the record. Well your look at and for the record it's it's 988 to 1016 but if you look at paragraph 4 of exhibit 8 of the to the financing statement of Security Pacific Bank it actually specifically references the Crazy Horse 2 intellectual property. And did Rick Riz own that or where I guess I don't see that I'm looking at the UCC Rick Rizolo was the president of the power company. The power company actually owned the business both the real property and the business. Right but the power company and Rick Rizolo entered into a plea agreement where they both and by where their their property the substitute of asset assets were ultimately forfeited. To the government so the government owned both. That doesn't mean the lender had a security interest in both. Well I actually believe that the lender did have a security interest based on well first of all the deed of trust that was executed by Rick Riz actually permitted Security Pacific Bank a security interest. Right but Rick Riz didn't own the trademark. The power company also excuse me also authorized Rick Riz Rick Rizolo to authorize a security interest in the power company's property. I don't see that document in the record so what is the document that you rely on? That is part of the memory on the board the board authorized the power company to do a lot of things but the power company didn't actually do it. And the board authorized also Rick Rizolo to allow a security interest to Security Pacific Bank in the power company's assets. But but Rick Riz didn't own the power company's assets so couldn't really do that. I guess I'm I'm not following this chain of title with the documents that I see before me. And I think it's difficult for the appellate court to sort of go through all these documents and sort of make definitive findings when the district court really didn't. If in fact there's a lack of clarity about what these underlying documents mean vis-a-vis these trademarks and whether or not they were actually transferred to your client. Isn't that an appropriate issue for remand? That might be an appropriate issue for remand your honor. However I believe that if you if you look at the standard of review it is there's not it's clear that there wasn't an abuse of discretion by the court. It had an ample basis to conclude what it did. There's no clearly erroneous fact finding nor the application of an erroneous legal principle. The district court is quoting the corporate resolution in its order which is not the guarantee that the power company actually entered into. So why isn't that an error? The district court mistook the corporate resolution for the actual guarantee. Well the court also had the guarantee before it as well. Whether it quoted or not it also had the guarantees of the power company in this and Rizzolo in front of it. It had the deed of trust that was executed by Rick Rizz which also according to paragraph 7 1d of that permitted security interests as Security Pacific Bank in the trademarks. It also had the UCC 1 of Security Pacific referencing paragraph 4 which included a description of the intellectual property. It had the authorization to enter into the plea deal where it would forfeit those assets. Do you want to discuss the abandonment issue? So assuming that we got to that why did the government not abandon the the trademark in the five years? Why why did the district court say enough as to no abandonment? Well first of all abandonment is very it's obviously very strict. It must be strictly proven by clear and convincing evidence and the challenger has the burden and here you have a forced, it's a non-voluntary withdrawal from the marketplace by virtue of the government seizure of these assets. So the government apparently was going to sell the whole thing together as a going concern wasn't able to find a buyer. I mean I'm just inferring from the record and then says oh we give up we'll just let the the bank foreclose or can I go foreclose on the real property? What why shouldn't I infer an abandonment from that sequence of events? Well that argument was tried and I referenced that in our brief. For example, one moment, the cash processing services versus ambient entertainment where there was the argument was made that the government the purchase of assets from the government the government had abandoned it when it just finally gave up and decided to sell. Well the government was trying to sell the whole thing. I mean the district court originally says there's two pieces of property. There's the real property and then there's the going concern business, personality, etc. And what opposing counsel says is the government still has the personality but and only allowed a foreclosure on the real property and I don't understand why anything about the real property. We disagree with that. Well explain that. Well I believe that the sale by the the asset forfeiture sale was a sale for all purposes. So it's about the real property and the business and the trademarks everything. But there's nothing in the record though really that says that anything went but the real property. So the trustee's deed of sale says you get the real property. There's nothing that says anything else went to Canico. Actually if the court looks at the second amended order of forfeiture which is the at the record at 167 to 179 it references the deed of trust, the security interest, it represents it references all of the assets. So I would. So what am I looking at? If you look at the the second amended forfeiture order. And where is that again? It's at the record at 1067 to 1079 and where Canico is substituted for Security Pacific Bank with respect to the deed of trust in the UCC one. But then this was there's a which says that Canico will conduct a non-judicial foreclosure sale of the property. Right there was the order for sale. Yeah and all that went was the non-judicial foreclosure sale based on the deed of trust which was only the the real property. Which is all that the the trustee deed of sale says it that it got. I mean this second amended order of forfeiture as I've looked at it appears to relate only to real property as opposed to things that would include the trademark. Is that right or wrong? Well if you look at the deed of trust, the deed of trust also references the intellectual property. But only what was owned by Rick Riz and Rick Riz didn't own the the trademark that was owned by Powerco. So I mean though the the Rick Riz purported to give the lender a deed of trust on everything it owned it couldn't give a deed of trust on something it didn't own. However the deed of trust also at the second amended order for forfeiture it talks about the deed of trust and it also addresses secured by the UCC-1 and the UCC-1 certainly includes the description of the intellectual property. That Rick Riz owned but Rick Riz didn't own the trademark that was Powerco. Actually the UCC-1 relates to the assets of Powerco. Well the UCC-1 that I saw on the record was only for Rick Riz so maybe you can cite me which is the UCC that relates to the assets of Powerco. I believe it was I'm sorry your honor but I believe it was that previously referenced paragraph 4 of Exhibit A to the financing statement for this UCC-1 and it's at the 988 to 1016. I'm sorry I don't have a more specific reference. The one I have says it's debtor is Rick Riz LLC. It doesn't say it's debtor is Powerco. I'm not sure if this is the right reference it's 1533 of the of the It's the only one that either of us found in the record shows Rick Riz as the debtor not Powerco. That's the problem here this this is a complicated transaction and again I'm a district judge most of the time but anyway in this my capacity to apologize I'm having trouble understanding why it's appropriate of us to make these I mean there's a there's an absence of specificity that aligns with what you're asking us to infer and that troubles me. I understand your honor if I could just return to the abandonment issue for a moment your honor the government had these assets from 2007 the club had been operating up until July of 2007 contrary to the appellant's claim of September of 06 there's receipts that are part of the record that showed the club was operating it had it until December of 2010 and at that point in time was when as the court indicated earlier granted Canico's motion to lift the stay and to be able to go through the sale February of 11 there was an order of sale in July the assets were purchased we we believe and we believe the law supports this that during the period of time that the government had this and based on these other cases as well that that was a forced withdrawal from the marketplace that that so that did not trigger the presumption so we believe that the court not spending a great deal of the opinion or of its order addressing this is the rebuttable presumption did not arise moreover under the law had the rebuttable presumption been arisen it's it can be one rebutted simply by showing valid reasons for non-use here we have the government owning everything for a period of time and then two even if that's even even if the rebuttable presumption is established it doesn't change the burden of persuasion it just changes burden of production so this is Judge Newman I'd like to comment that I agree with the comments of my two guys the appropriate forum is the district court all right thank you your honor thank you your honors I think this is similar to the LGS versus architects case and the Second Circus ITC case in 2007 where the evidentiary record the in dispute and it's really just the legal import of those documents and so Russell Road feels that this court would be able to make a determination as to whether defendants did acquire or did not acquire the crazy horse to trademark at that July 1st 2011 foreclosure and I think the district courts order evidences perhaps a lumping together of Rick Riz and the power company instead of separating them out there's references to the UCC statement and implying that it was a UCC statement for the power company when it clearly was just a UCC statement for Rick Riz which never owned the trademark and likewise that seven that paragraph seven in the deed of trust that relates to the trustors intangibles which was Rick Riz again and Rick Riz if it had any trademarks certainly would have provided a security interest through paragraph seven of the deed of trust but it didn't own any so that certainly cannot be construed to provide a security interest in the crazy horse to mark which was owned by completely separate legal entity the power company with regard to the 54 B and 59 e issue it's true that there's no time limitation on 54 B which speaks to interlocutory orders generally but orders granting or refusing or vacating preliminary injunctions are subject to the time limitations of 59 e as this court held in Credit Suisse and therefore if it is determined that it's a motion for reconsideration and that that guarantee did not constitute newly discovered evidence because it could have been submitted by the defendants had they exercised due diligence then it was also timely I will say that in addition to mr. Mushkin's statement at the hearing there was also deposition testimony at er 284 where defendants testified that they acquired those guarantees along with all the other documents when they acquired the loan from the FDIC so I think unless the court has any other questions currently not thank you thank you the case of Russell Road food and beverage versus Michael Kalam is submitted
judges: Daniel, Noonan, Ikuta